UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ASSOCIATION OF RHODE ISLAND AUTHORS, LUCIE CONTENTE, PAUL CARANCI, and STEVEN PORTER<br><br>v.<br><br>NEENA S. SAVAGE, in her official capacity as Tax Administrator of the Rhode Island Division of Taxation, and RANDALL ROSENBAUM, in his official capacity as Executive Director of the Rhode Island State Council for the Arts | CHALLENGE TO CONSTITUTIONALITY OF STATE STATUTE<br><br><br>1:19-cv-00265-WES-PAS |

**FIRST AMENDED COMPLAINT**

1. Pursuant to R.I.G.L. § 44-18-30B, the State of Rhode Island has established a statutory scheme whereby Rhode Island writers, composers, and artists are eligible upon application for an exemption from the obligation to collect Rhode Island sales tax for the sale of their works when sold directly by the artist ("Author Exemption").  Pursuant to R.I.G.L. § 44-18-30B(c)(1)(ii), the State of Rhode Island has delegated the authority to determine which writers, composers, and artists are eligible for the Author Exemption to the Tax Administrator in consultation with the Rhode Island State Council for the Arts.  However, the Author Exemption, on its face and/or as applied by the Defendants, violates the First Amendment and the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution.

**JURISDICTION**

2. This action is brought pursuant to 42 U.S.C. § 1983 and the Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343 and 2201 to grant declaratory and injunctive relief.

3. Venue in the District of Rhode Island is proper pursuant to 28 U.S.C. § 1391(b).

## PLAINTIFFS

4. The Plaintiff, Association of Rhode Island Authors ("ARIA"), is a domestic nonprofit corporation organized under the laws of the State of Rhode Island with a principal place of business in Glocester, Rhode Island.

5. ARIA's membership consists of upwards of three hundred Rhode Island writers of both fiction and nonfiction works, and its mission is to raise awareness of Rhode Island authors and promote their works, while also working in Rhode Island's communities with the goal of mentoring students and educating them about the publishing industry.

6. ARIA has standing to sue because its members, who include but are not limited to the named Plaintiffs, have suffered and will continue to suffer irreparable harm from the Defendants' a) categorical denial of eligibility for the Author Exemption for the nonfiction works of ARIA members; and b) imposition of ad hoc and/or discriminatory and more burdensome requirements upon authors of nonfiction works for eligibility for the Author Exemption.

7. The Plaintiff, Lucie Contente, is a resident of East Providence, Rhode Island, an author of original works of fiction and nonfiction books, and a member of ARIA.

8. The Plaintiff, Paul Caranci, is a resident of North Providence, Rhode Island, an author of original works of nonfiction books, and a member and a director of ARIA.

9. The Plaintiff, Steven Porter, is a resident of Glocester, Rhode Island, an author of original works of fiction and nonfiction books, and a member and the current President of ARIA.

## DEFENDANTS

10. Neena Savage is a citizen of the State of Rhode Island, named in this action solely in her official capacity as Tax Administrator for the Rhode Island Division of Taxation ("Tax Administrator").

11. The Tax Administrator is responsible for, among other things, the determination and issuance of the Author Exemption, R.I.G.L. § 44-18-30B(d), and at all times material hereto the Tax Administrator has acted under color of state law within the meaning of 42 U.S.C. § 1983.

12. Randall Rosenbaum is a citizen of the State of Rhode Island, named in this action solely in his official capacity as Executive Director for the Rhode Island State Council on the Arts ("RISCA"), a state commission within the executive department of the State of Rhode Island pursuant to R.I.G.L. § 42-75-2 ("RISCA Executive Director").

13. RISCA is responsible to consult with the Tax Administrator in the determination and issuance of the Author Exemption, R.I.G.L. § 44-18-30B(c)(1)(ii), and at all times material hereto said responsibility has been fulfilled by the RISCA Executive Director acting under color of state law within the meaning of 42 U.S.C. § 1983.

## FACTS

### The Author Exemption

14. R.I.G.L. § 44-18-18 declares that the Tax Administrator assesses and collects a seven percent sales tax upon sales at retail in the State of Rhode Island.

15. In 2013, the Rhode Island General Assembly enacted R.I.G.L. § 44-18-30B, the Author Exemption, creating an exemption from the requirement to collect sales tax for sales by writers, composers, and artists residing in Rhode Island for their "original and creative works."

16. A copy of R.I.G.L. § 44-18-30B is set forth in Exhibit A, attached hereto, and is fully incorporated herein.

17. The Division of Taxation promulgated regulations at 280-RICR-20-70-11 to implement and enforce R.I.G.L. § 44-18-30B.

18. A copy of 280-RICR-20-70-11 is set forth in Exhibit B, attached hereto, and is fully incorporated herein.

19. R.I.G.L. § 44-18-30B provides, in pertinent part:

    a. Subsection (b)(1) declares that the Author Exemption "only applies to sales by writers, composers, and artists residing in and conducting a business within the state of Rhode Island."

    b. Subsection (b)(1) declares that "a 'work' means an original and creative work, whether written, composed, or executed for 'one-of-a-kind, limited production' that falls into one of the following categories[,]" which include, among other things "[a] book or other writing[.]"

    c. Subsection (b)(2) declares that, for purposes of the Author Exemption, "a 'work' includes any product generated as a result of any of the above categories."

    d. Subsection (b)(3) declares that "a 'work' does not apply to any piece or performance created or executed for industry-oriented, commercial, or related production."

    e. Subsection (c)(1)(i) declares that the Author Exemption applies to any individual: "Who is a resident of, and has a principal place of business situated in, the state of Rhode Island."

    f. Subsection (c)(1)(ii) declares that the Author Exemption applies to any individual: "Who is determined by the tax administrator in consultation with the Rhode Island council on the arts, after consideration of any evidence he or she deems necessary or that is submitted to him or her by the individual, to have written, composed, or executed, either solely or jointly, a work or works that would fall into one of the categories listed in subsection (b)(1)."

20. R.I.G.L. § 44-18-30B by its terms does not exclude original works of nonfiction books from eligibility for the Author Exemption.

21. R.I.G.L. § 44-18-30B by its terms does not establish a separate set of standards to determine "one-of-a-kind, limited production" for original works of fiction or nonfiction books for eligibility for the Author Exemption.

22. 280-RICR-20-70-11 by its terms does not exclude original works of nonfiction books from eligibility for the Author Exemption.

23. 280-RICR-20-70-11 by its terms does not establish a separate set of standards to determine "one-of-a-kind, limited production" for original works of fiction or nonfiction books for eligibility for the Author Exemption.

<u>Defendants' Categorical Exclusion of Nonfiction Works from the Author Exemption</u>

24. Prior to the filing of the within lawsuit on May 7, 2019, the Defendants determined that nonfiction books are not "works" pursuant to R.I.G.L. § 44-18-30B and, therefore, Rhode Island authors of original works of nonfiction cannot obtain the Author Exemption for nonfiction works.

25. Upon information and belief, sometime after the Rhode Island General Assembly's enactment of R.I.G.L. § 44-18-30B, the RISCA Executive Director informed ARIA and its members at ARIA meetings and/or ARIA workshops that nonfiction books would not receive the Author Exemption under R.I.G.L. § 44-18-30B, but that fiction books would receive the Author Exemption under R.I.G.L. § 44-18-30B.

26. Upon information and belief, sometime after the Rhode Island General Assembly's enactment of R.I.G.L. § 44-18-30B, the RISCA Executive Director informed Steven Porter, President of ARIA, that nonfiction books would not receive the Author Exemption under R.I.G.L. § 44-18-30B, but that fiction books would receive the Author Exemption under R.I.G.L. § 44-18-30B.

27. Upon information and belief, sometime after the General Assembly's enactment of R.I.G.L. § 44-18-30B, representatives of the Tax Administrator provided verbal confirmation on multiple occasions to ARIA members that nonfiction books would not receive the Author Exemption under R.I.G.L. § 44-18-30B, but that fiction books would receive the Author Exemption under R.I.G.L. § 44-18-30B.

28. Upon information and belief, as a direct result of the foregoing notifications that nonfiction books will not receive the Author Exemption under R.I.G.L. § 44-18-30B, many members of ARIA, including Steven Porter and Paul Caranci, were deterred from applying for the Author Exemption for their nonfiction books on the basis that it would be futile to apply.

29. Upon information and belief, the Defendants have enforced R.I.G.L. § 44-18-30B to categorically exclude nonfiction books from eligibility for the Author Exemption, while simultaneously providing the Author Exemption for fiction books pursuant to R.I.G.L. § 44-18-30B.

30. In consultation with the RISCA Executive Director, the Tax Administrator has arbitrarily and unconstitutionally denied the Author Exemption for nonfiction books, but approved and/or issued the Author Exemption for fiction books pursuant to R.I.G.L. § 44-18-30B.

Defendants' Post-Suit Actions Concerning Treatment of<br>Nonfiction Works Under the Author Exemption

31. Upon the filing of the within lawsuit on May 7, 2019, the Defendants publicly denied that they had imposed a categorical exclusion for works of nonfiction.

32. In response thereto, each of the individual plaintiffs submitted and/or resubmitted applications for the Author Exemption for their nonfiction books.

33. In contrast to their previous issuance of the Author Exemption for Rhode Island authors, for works of fiction, Defendants have now purported to impose additional requirements, burdens

and conditions before they will issue or consider issuing the Author Exemption for nonfiction books.

### Lucie Contente (Fiction and Nonfiction Author and ARIA Member)

34. At all times material hereto, Lucie Contente possessed a valid Retail Sales Permit, and has complied and continues to comply with R.I.G.L. § 44-18-30B and any and all requests made by the Tax Administrator.

35. At all times material hereto, Lucie Contente has been in the business of selling her original works of fiction and nonfiction books in the State of Rhode Island.

36. Lucie Contente resides in and conducts business within the State of Rhode Island and qualifies for the Author Exemption pursuant to R.I.G.L. § 44-18-30B because her books are "works" as defined in R.I.G.L. § 44-18-30B(b)(1).

37. In or about 2018, Lucie Contente made an application to the Tax Administrator for the Author Exemption for her nonfiction book entitled "*Gluten and Gluten Free Cooking in Perfect Harmony*."

38. In or about 2018, Lucie Contente made an application to the Tax Administrator for the Author Exemption for her fiction book entitled "*Bella from the Farm*" and for her nonfiction book entitled "*Gluten and Gluten Free Cooking in Perfect Harmony Take 2*."

39. In or about 2018, the Tax Administrator of the Division of Taxation issued Lucie Contente the Author Exemption only for her fiction book entitled "*Bella from the Farm*" and not for her nonfiction books "*Gluten and Gluten Free Cooking in Perfect Harmony*" and "*Gluten and Gluten Free Cooking in Perfect Harmony Take 2*." A copy of the Author Exemption issued to Contente for her fiction book is attached hereto as Exhibit C and incorporated herein.

40. Prior to issuing the Author Exemption to Contente for her fiction book entitled "*Bella from the Farm*", Defendants made no inquiry of Contente concerning the book or number of copies to be published and imposed no conditions upon her, such as a requirement to sign or number individual copies before sale.

41. Upon information and belief, the Tax Administrator refused to process Lucie Contente's application for the Author Exemption for the nonfiction books entitled "*Gluten and Gluten Free Cooking in Perfect Harmony*" and "*Gluten and Gluten Free Cooking in Perfect Harmony Take 2*" on the basis that each book was a work of nonfiction.

42. The Tax Administrator took no formal or official action on Contente's 2018 applications for the Author Exemption for the aforesaid two nonfiction books.

43. On or about May 16, 2019, Contente submitted a new application for the Author Exemption for the aforesaid two nonfiction books.

44. On or about July 19, 2019, after Contente made repeated inquiries to the office of the Tax Administrator, a representative of the Tax Administrator asked Contente whether her nonfiction books were limited edition or mass-produced and whether Contente would agree to number each copy.  Contente confirmed that the two subject nonfiction books are limited edition and agreed to number them if required.

45. To date, notwithstanding her applications in 2018 and 2019, the Tax Administrator has taken no formal or official action on Contente's application for the Author Exemption for Contente's two nonfiction works.

46. As a direct result thereof, Contente is required to charge sales tax in order to sell her two nonfiction books in Rhode Island.

### Paul Caranci (Nonfiction Author and ARIA Member)

47. At all times material hereto, Paul Caranci possessed a valid Retail Sales Permit, and has complied and continues to comply with R.I.G.L. § 44-18-30B and any and all requests made by the Tax Administrator.

48. At all times material hereto, Paul Caranci has been in the business of selling his original works of nonfiction books in the State of Rhode Island.

49. Paul Caranci resides in and conducts business within the State of Rhode Island and qualifies for the Author Exemption pursuant to R.I.G.L. § 44-18-30B because his books are "works" as defined in R.I.G.L. § 44-18-30B(b)(1).

50. Since the enactment of R.I.G.L. § 44-18-30B in 2013, Paul Caranci created and sold the following original works of nonfiction as to which he collected sales tax on sales in Rhode Island: *"North Providence: A History & The People Who Shaped It," "The Hanging & Redemption of John Gordon: The True Story of Rhode Island's Last Execution," "Award Winning Real Estate Sales in a Depressed or Declining Market," "The Essential Guide to Running for Local Office," "Monumental Providence: Legends of History in Sculpture, Statuary, Monuments and Memorials," "Scoundrels: Defining Corruption Through Tales of Political Intrigue in Rhode Island," "Wired: A Shocking True Story of Political Corruption and the FBI Informant Who Risked Everything to Expose It," "The Promise of Fatima: One Hundred Years of History, Mystery and Faith,"* and *"I Am The Immaculate Conception: The Story of Bernadette of Lourdes."*

51. Since the enactment of R.I.G.L. § 44-18-30B in 2013, and prior to the filing of this lawsuit, Paul Caranci had not applied for the Author Exemption for any of the aforesaid nine nonfiction

books because he was informed by the RISCA Executive Director that nonfiction works would not receive the Author Exemption under R.I.G.L. § 44-18-30B.

52. In anticipation that he might create works of fiction which would qualify for the Author Exemption, Caranci applied for and was issued a blanket Author Exemption by the Tax Administrator in January 2014 for all "published and non-published works of fiction published works are purchased [from] publisher and sold at fairs and book presentation events." A copy of the Author Exemption issued to Caranci for works of fiction is attached hereto as Exhibit D and incorporated herein.

53. Prior to issuing the Author Exemption to Caranci for fiction books in 2014, Defendants made no inquiry of Caranci concerning the quantity, number or title of the unidentified works of fiction and imposed no conditions upon him, such as a requirement to sign or number individual copies before sale.

54. On or about May 21, 2019, Caranci submitted an application for the Author Exemption for the aforesaid nine separately identified nonfiction books by mail to the Tax Administrator.

55. On or before July 11, 2019, Caranci was advised by the office of the Tax Administrator that it could not find his application for the Author Exemption submitted in May 2019.

56. On or about July 12, 2019, Caranci hand-delivered the application for the Author Exemption for the aforesaid nine separately identified nonfiction books to the Tax Administrator.

57. On or about July 19, 2019, a representative of the Tax Administrator inquired whether Caranci's nonfiction books were limited edition, asked the quantity produced of each book, and whether Caranci would agree to sign and number each copy before sale. Caranci provided information concerning the quantity and agreed to sign and number them before sale if required.

58. To date, notwithstanding his applications in 2019, the Tax Administrator has taken no formal or official action on Caranci's application for the Author Exemption for Caranci's nine separately identified nonfiction works.

59. As a direct result thereof, Caranci is required to charge sales tax in order to sell his nine nonfiction books in Rhode Island.

<u>Steven Porter (Fiction Author, Nonfiction Author, and ARIA Member)</u>

60. At all times material hereto, Steven Porter possessed a valid Retail Sales Permit, and has complied and continues to comply with R.I.G.L. § 44-18-30B and any and all requests made by the Tax Administrator.

61. At all times material hereto, Steven Porter has been in the business of selling his original works of fiction and nonfiction books in the State of Rhode Island.

62. Steven Porter resides in and conducts business within the State of Rhode Island and qualifies for the Author Exemption pursuant to R.I.G.L. § 44-18-30B because his books are "works" as defined in R.I.G.L. § 44-18-30B(b)(1).

63. Since the enactment of R.I.G.L. § 44-18-30B in 2013, the Tax Administrator of the Division of Taxation, has issued Steven Porter the Author Exemption for Artistic Works for the fiction books entitled *"Confessions of the Meek and Valiant"* and *"Manisses."* A copy of the Author Exemption issued to Porter for his fiction books, described as "independ[ent]ly published books-fiction" is attached hereto as Exhibit E and incorporated herein.

64. Prior to issuing the Author Exemption to Porter for fiction books in 2013, Defendants made no inquiry of Porter concerning the works of fiction or number of copies to be published and imposed no conditions upon him, such as a requirement to sign or number individual copies before sale.

65. Since the enactment of R.I.G.L. § 44-18-30B in 2013, Steven Porter created and sold the following original work of nonfiction as to which he collected sales tax on sales in Rhode Island: *"Scared to Death... Do it Anyway."*

66. Since the enactment of R.I.G.L. § 44-18-30B in 2013 and prior to filing the lawsuit, Steven Porter had not applied for the Author Exemption for his nonfiction book because he was informed by the RISCA Executive Director that nonfiction books will not receive the Author Exemption under R.I.G.L. § 44-18-30B.

67. As a direct result thereof, Porter was required to charge sales tax in order to sell his nonfiction book in Rhode Island.

68. On or about May 15, 2019, Porter submitted an application for the Author Exemption for the aforesaid nonfiction book in his business name, Stillwater River Publications.

69. On or about July 8, 2019, the Tax Administrator issued the Author Exemption to Porter. A copy of the certificate of exemption issued to Porter for his nonfiction book is attached hereto as Exhibit F and incorporated herein.

70. Porter received no inquiry or requirement of conditions from the Tax Administrator prior to receiving the Author Exemption for the nonfiction book.

71. As a direct result of the communications to Contente and Caranci, Porter is genuinely afraid that he will be held by the Tax Administrator to have violated requirements of the Author Exemption if he sells his nonfiction book without collecting a sales tax and/or if he does not fulfill conditions or requirements articulated by representatives of the Tax Administrator to other authors but not appearing in any certificate of exemption issued to him.

Allegations Common to All Plaintiffs

72. Each of the individual plaintiffs, as well as, upon information and belief, other members of ARIA, have altered their marketing, and experienced a reduction of income from the sale, of their nonfiction works as a result of the Defendants' exclusion of nonfiction works from eligibility for the Author Exemption, including the following:

   a. Each of the Plaintiffs has participated in Rhode Island events, such as book fairs, festivals and other events promoting or featuring Rhode Island authors, and has received objections from prospective customers to the inclusion of sales tax for their nonfiction books where other Rhode Island authors selling works of fiction, sometimes immediately adjacent, are promoting their books as "sales tax free."

   b. In order to meet objections and conclude sales, each of the Plaintiffs has reduced the sales price of their nonfiction books to achieve the equivalent total sales price, including sales tax, of their book list price, in order to approximate a tax-free or tax-included total sales amount, while thereafter remitting the 7% tax collected on the reduced price to the state.

   c. Upon information and belief, the decision to adjust the sales price to approximate a tax-free sale increased Plaintiffs' sales but also reduced net income and profit on each book sold.

Controversy and Violations

73. This action presents a ripe, justiciable, and actual controversy, within the meaning of 28 U.S.C. § 2201, pending between and among the Parties because R.I.G.L. § 44-18-30B, on its face and/or as applied, violates the rights of the Plaintiffs to freedom of speech and of the press, in

violation of the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

74. To the extent that R.I.G.L. § 44-18-30B delegates authority to determine "original and creative work" to the Defendants, as applied by the Defendants to distinguish between "original and creative works" on the basis of "fiction" or "nonfiction" works, R.I.G.L. § 44-18-30B authorizes an exercise in discretion by a decision-maker in violation of the First Amendment to the United States Constitution.

75. The application of R.I.G.L. § 44-18-30B by the Defendants is "content-based" and, therefore, subject to, but cannot withstand, strict scrutiny, in that it cannot be shown that it is narrowly tailored to further a compelling state interest and the least restrictive means have been used to accomplish it.

76. The application of R.I.G.L. § 44-18-30B to the Plaintiffs by the Defendants is arbitrary and capricious, without articulated standards or procedures, in violation of due process and as it concerns the fundamental rights of free speech and free press is therefore, subject to, but cannot withstand, strict scrutiny, in that it cannot be shown that it is narrowly tailored to further a compelling state interest and the least restrictive means have been used to accomplish it.

77. The application of R.I.G.L. § 44-18-30B to the Plaintiffs by the Defendants is discriminatory and imposes additional conditions and/or qualifications upon authors based on the nature of their work denying equal protection of the laws and as it concerns the fundamental rights of free speech and free press is therefore, subject to, but cannot withstand, strict scrutiny, in that it cannot be shown that it is narrowly tailored to further a compelling state interest and the least restrictive means have been used to accomplish it.

78. The suppression of and/or discrimination against protected speech, whether by direct government action, interference, and/or any other means, constitutes irreparable harm for which Plaintiffs have no adequate remedy at law.

79. The public has a substantial interest in the protection of its Constitutional rights and the status quo is preserved by maintaining those Constitutional rights.

80. Upon information and belief, no harm will be suffered by the Defendants if declaratory and/or injunctive relief is granted, in that, among other things, the relief sought would not in any manner or form seek to prevent and/or disrupt the State of Rhode Island from collecting sales tax, or otherwise seek to enjoin, suspend or restrain the assessment, levy or collection of any tax of the State of Rhode Island.

81. The matter at issue does not seek to determine the eligibility or entitlement of any applicant to the Author Exemption, but only to challenge the categorical exclusion from consideration and the discriminatory and/or arbitrary standards or conditions being employed by Defendants in evaluating eligibility;

82. Upon information and belief, the laws of the State of Rhode Island fail to provide a plain, speedy or efficient remedy in the courts of the State where as here certain Plaintiffs have no recourse in state courts in the absence of official or formal action upon Plaintiffs' applications for the Author Exemption.

**COUNT I**
(First Amendment to the United States Constitution)

83. The Plaintiffs incorporate by reference the allegations contained in all prior paragraphs.

84. The First Amendment to the United States Constitution, as applicable to the states through the Fourteenth Amendment, prohibits the making of any law that "abridge[s] the freedom of speech, or of the press."

85. R.I.G.L. § 44-18-30B violates the rights of the Plaintiffs to freedom of speech and of the press on its face to the extent that it contains a delegation of discretion to the Defendants to determine what qualifies as an "original and creative work" based on content, in violation of the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

86. R.I.G.L. § 44-18-30B violates the rights of the Plaintiffs to freedom of speech and of the press as applied by the Defendants to exclude original works of nonfiction from eligibility for consideration of the Author Exemption, in violation of the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

87. R.I.G.L. § 44-18-30B violates the rights of the Plaintiffs to freedom of speech and of the press as applied by the Defendants to impose additional or different conditions, qualifications or exclusions to original works of nonfiction for consideration of the Author Exemption, in violation of the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

88. As a result of the foregoing, the Plaintiffs have suffered and continue to suffer actual harm and the chilling of their freedom of speech and of the press.

## COUNT II
### (Equal Protection Clause of the Fourteenth Amendment to the United States Constitution)

89. The Plaintiffs incorporate by reference the allegations contained in all prior paragraphs.

90. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, prohibits the states from denying "to any person within its jurisdiction the equal protection of the laws."

91. R.I.G.L. § 44-18-30B, as applied by Defendants, denies Plaintiffs equal protection of the laws in violation of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

92. As a result of the foregoing, the Plaintiffs have suffered and continue to suffer actual harm and the chilling of their freedom of speech and of the press.

## COUNT III
(Due Process Clause of the Fourteenth Amendment
to the United States Constitution)

93. The Plaintiffs incorporate by reference the allegations contained in all prior paragraphs.

94. The Due Process Clause of the Fourteenth Amendment to the United States Constitution, prohibits the states from depriving "any person of life, liberty, or property, without due process of law."

95. R.I.G.L. § 44-18-30B, in establishing an entitlement to a tax exemption under specific conditions and requiring that application be made therefor, creates a form of "property" entitled to the protections of the Due Process Clause.

96. R.I.G.L. § 44-18-30B, as applied by Defendants, violates the rights of the Plaintiffs to due process in violation of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

97. As a result of the foregoing, the Plaintiffs have suffered and continue to suffer actual harm and the chilling of their freedom of speech and of the press.

## RELIEF SOUGHT

WHEREFORE, upon all allegations and counts alleged herein, the Plaintiffs respectfully pray that the Court:

a. issue judgment declaring that R.I.G.L. § 44-18-30B is unconstitutional and violates the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment and 42 U.S.C. § 1983, on its face and/or as applied, and issue corresponding injunctive relief preventing: (i) the categorical exclusion of certain books from consideration for the Author Exemption on the basis that the book is one of nonfiction; and (ii) preventing the imposition of additional or different conditions, qualifications or exclusions of certain books from consideration for the Author Exemption on the basis that the book is one of nonfiction;

b. issue judgment declaring that R.I.G.L. § 44-18-30B is unconstitutional and violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and 42 U.S.C. § 1983, as applied, and issue corresponding injunctive relief preventing the imposition of additional conditions or different, qualifications or exclusions of certain books from consideration for the Author Exemption on the basis that the book is one of nonfiction;

c. issue judgment declaring that R.I.G.L. § 44-18-30B is unconstitutional and violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and 42 U.S.C. § 1983, as applied, and issue corresponding injunctive relief preventing the imposition of additional or different conditions, qualifications or exclusions of certain books from consideration for the Author Exemption on the basis that the book is one of nonfiction;

d. award Plaintiffs their costs and expenses, including reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988 and on any other applicable grounds; and

e. grant such other and further relief as the Court deems just and proper.

         Plaintiffs,
         By their attorney,

          /s/ Lynette Labinger
         Lynette Labinger #1645
         128 Dorrance Street, Box 710
         Providence, RI 02903
         401-465-9565
         ll@labingerlaw.com

         Cooperating counsel,
         AMERICAN CIVIL LIBERTIES UNION
         FOUNDATION OF RHODE ISLAND

## **CERTIFICATION**

  I hereby certify that on July 25, 2019, a true copy of this document was delivered electronically using the CM/ECF system to all counsel of record.


          /s/ Lynette Labinger